on behalf of the defendant's house, Mr. Larry Flex, on behalf of the plaintiff's attorney, and the defense attorney, Mr. Larry Wechter. I please the Court, Larry Wechter, for Mr. Lipsey this morning. The main or first argument contained in the brief pertains to what I'll just as a shorthand way of expressing and say is the surprise and low evidence provided by the State in Mr. Lipsey's trial. There is a de novo standard of review as to whether a discovery violation occurred, and then if indeed that's the case, there's an abuse of discretion standard to review any sanction that would have been imposed in the trial court. Now, isn't it your burden to show prejudice with respect to this? Well, it's a de novo standard to determine whether a discovery violation occurred when the court, of course, looks at the entire record and determines whether in fact there was one. Well, assuming for a minute there was a discovery violation, do you not have to show that your client was prejudiced by this discovery violation? I'm not sure that the case law is really clear on this, Your Honor. Well, how was your client prejudiced? So you're saying surprise, are you acquainting surprise with prejudice? Well, here's the problem. The defense is entitled to know before the trial begins what evidence the State has. But not with respect to a rebuttal witness. Yes, with respect to, I would say, with all due respect to you, yes, as to rebuttal evidence as well, because the rule is now clear that if the State has rebuttal evidence, they have to disclose it before the trial. Whether or not they've decided to use it? Whether or not they've formed the intent to use it? I'm sorry, they do have to have the intent to use it, but the question then from a de novo standpoint is, did they really intend to use it? Not just taking their professions of what was going through their minds as the truth in the situation. And that's why there's case law that indicates that a reviewing court looks at this de novo and determines really whether they had that intention or not. So that's the only thing we have to look at, is whether they had the intent to use it. But that tells us whether or not there was a discovery violation, correct? Right. And in the court below, there was no finding of such a violation for which there had to be a sanction of any kind. All that the judge did was say, well, you know, now it's in evidence, and so I'll give you a chance to try to rebut it. And give you three weeks to do that, correct? And give them some time, right. Three weeks, and allowed, so rebuttal. Right. But the problem is, how do you unring the bell, basically? Well, that's what I'm asking. What was the prejudice? What was the problem here? The problem was, number one, the defense didn't have an adequate opportunity to determine how to present its case, whether to put on certain witnesses, whether to refrain from putting on certain witnesses. So it's trial strategy is the bottom line. Your trial strategy was changed? The defense attorney says, I would have looked at this case differently, basically, is what his comment was. And if I can just digress for one moment, for lack of a better term, in the good old days, before more modern discovery rules, it was the norm for one party to put on its evidence, and its opponent could withhold things, could keep them up their sleeve until they would spring on the other side some evidence that would rebut what the testimony had been. That was the norm. And you could surprise your opponent, and you could prejudice your opponent, and it was just, that's the way it was. The rules were changed so that that doesn't happen anymore. And yet, that's what occurred in the trial court here. What was the defense here? The defense was that my client was physically incapable of performing these acts. Because? Because of his medical problems. Which affected what? Which affected, basically, his sexual functioning. His sexual functioning, correct. And also, his ability to walk, to stand, and so forth. Because he had to use a cane, and he had pain from different medical problems. But he himself said he didn't always have to use his cane, correct? Not always, that's right. Right. And the victim also testified that he used a cane, but he was able to walk without it, correct? But infrequently, yes. And so what happened at the trial was, the defendant's wife gets on the stand and says, you know, he just can't do this. In surrebuttal, she gets on the stand and says, well, you know, there are unusual occasions when he does walk without assistance, and it's because of some other problems that he has, and he has to, he feels that he has to compensate for these other medical problems by walking without the cane. But when she does that in surrebuttal, it looks like it's an excuse. It looks like you're trying to cover for your earlier testimony in the defense case in chief, when she says, no, no, no, he just can't do it. So is that what we're... Excuse me one second. Go ahead. He can't do it, meaning he can't do what? He can't walk without assistance. That was the focus of the video, was that he was walking without assistance. Well, how, excuse me one second, how does that affect his sexual function? Well, it was a combination of the two things. The defense was, A, he can't, he doesn't have the sexual function to do the things his daughter accused him of doing, and B, some of her testimony is that he did these things to her while he was standing or he was kneeling or whatever he was doing. So my question was, had that been disclosed, what would have been different in the way that they conducted the case, as far as their strategy? Right. Well, of course, I can't get into defense counsel's mind, and so this is, for me at least, it's a bit of speculation, but if it had been me, knowing that the state had this evidence showing the defendant walking unassisted through the Walmart store, then I have to ask questions about that of my witnesses. Maybe I have them give a fuller explanation in their direct testimony, like Mrs. Lipsy did in Sir Rebuttal. Maybe I don't put them on as witnesses. Maybe I change my strategy. Maybe I don't raise that as defense. In a sense, this is an unanswerable question, because I'm not the trial counsel. I don't know exactly what would have been done. I didn't consult with these people individually. But perhaps there's a completely different defense. Perhaps the defense is that the complaining witness is not believable. She waits for years to make these disclosures. She's not consistent in the detail, and so forth. And maybe the defense relies on a presumption of innocence. Well, the trial judge ruled on that and didn't allow that to come in, that evidence with respect to her. Isn't that correct? I'm sorry, which are you referring to? Didn't the trial judge, wasn't there a motion in limine with regard to that evidence about her lying? The complaining witness? Yes. Yeah, but that's not what I'm referring to. I'm sorry. I thought you were referring to that aspect of the defense. Her delay in disclosure, the fact that she lied. Well, the delay is part of the evidence, because she says these events took place on such and such a date so and so many years ago. So that was not excluded. Right. The defense did try to use that as well. Well, and they argue that, of course, that that's a discrepancy or a failure to report shows that she's not a credible witness. Right. But no one ever testified that the defendant could not walk unassisted. Isn't that correct? Ever? In this trial. The victim didn't testify he could walk, that he couldn't walk unassisted. He didn't tell the police that he couldn't walk unassisted. His wife didn't testify. His half-brother didn't testify that he could not walk unassisted. Isn't that correct? I think they, I'm trying to recall, I think they all indicate that it was a rare occurrence that it was very difficult for him to walk unassisted, something to that effect. And, but that's, the thrust of the defense was it's extremely difficult for him. It's a rare event for him. And he has all these medical problems. He has spina bifida and so forth. And that makes it difficult for him to stand, to walk, to be unassisted, to have sexual relations. There was a lot of discussion about what his capabilities were because of all these conditions. So what happens is, before the trial, the state knows, the state knows this is the defense. It's explicit in the discovery. There's medical records. There's all kinds of indications of who the witnesses are going to be. The defendant's wife has talked to the police well in advance of the trial when the defendant gets charged and she talks about his incapacity to have sexual relations. They know. And they ask for more discovery on his medical condition. The state knows. There's no question. The state knows ahead of time this is going to be the defense. And then they find out that this probation officer has viewed him walking unassisted in the Walmart store. And they are the ones, the assistant state's attorney is the one who initiates the investigation to see if they can get some video of Mr. Lipsy walking through that store. And below, didn't they argue that this was really a collateral matter, the fact that he was- The state. Pardon? The state. No. You're the defense. In trying to keep the matter out and arguing that it should not be admitted, they argued it was collateral. Because it showed him walking as opposed to, really, the focus of the defense was his capability of having an erection or ejaculating. I'm sorry, I'll have to double check my notes on that. I don't recall precisely. But the main objection was, you're taking this by surprise. So the state has a deputy go out, and they get the Walmart video. And the assistant sits in the office of the elected state's attorney, and he says, what do you think we should do? And what does Mr. Weiss say? He says, keep it in your breast pocket. Don't disclose it to them until their case is over so clearly they are lying in wait to see what the defense exact testimony is going to be, even though they know what the outline of the defense. They have made a- Go ahead. The state had made a motion in Limine to try to get additional information with respect to the exact focus of the defense. Isn't that correct? Right. Okay. And the response was, we're not going to give you any other information. We're just telling you that Category A witnesses, there are only two of the Category A witnesses who will testify about the issue. The defendant may testify and his wife may testify. And the judge issued a ruling with respect to that. Did he not? I want to say, Your Honor, that there were some medical records exchanged. They're not in the record to my recollection. Perhaps they are. But the point is there was a full disclosure of the fact that this was the defense. And the state's argument on appeal is, well, we didn't know exactly what the defense witnesses were going to testify. Well, of course, that's always the case. That's always the case. You have to wait for the defense case in chief to know precisely the details of the testimony. That does not mean you are unaware of the thrust of the defense. Had she not testified, as she did, though, they wouldn't have produced the Wal-Mart evidence, right? Why would they want to? Well, they could have, I suppose. It wouldn't be rebutting anything. It wouldn't be rebutting anything. I don't think it would have been irrelevant, necessarily. But they hadn't produced it in their case in chief, so all that would be left would be rebuttal, and if there's nothing to rebut, they wouldn't have done it. Right, but they could have done it in their case in chief. Yes, they could have done it. And they had it ready. They had it right at their elbow, waiting to introduce it. And Mrs. Lipsy walks off the witness stand, and the prosecutor walks up to the defense counsel and says, here, here it is. I mean, instantly. And knows when the state's rebuttal witnesses are going to be available, and has checked everything out, and he's talked to his boss, and they're ready to spring it on the defense. Did the defense ever make a written formal motion for discovery in this case, and is it part of the record? I believe they filed a standard discovery motion. I'll check that, too. I don't think there's any question, though, that the state recognized its obligation and filed a number of discovery answers. Am I answering your question? Yes. Okay. So the point is that the state knows this is going to happen. They're waiting in the wings. And now we're back to the good old days, when it's just fine to develop that kind of evidence and spring it on your opponent. Do you have a question? I guess my last question really kind of goes to policy. I mean, if we are to affirm here, are we beginning to sanction discovery by surprise again? Absolutely. What's the lesson? What's the lesson to people like Mr. Pensilla? The lesson is, you know, it's just not that big a deal. You can withhold this evidence. Somebody might slap you on the wrist, but so what? And so what gets lost in all of this is, again, the defendant's right to know in advance what the evidence is going to be so he can make intelligent decisions about what he's going to present. Isn't that the whole purpose of discovery? So it really isn't a pivotal issue here, then, that we find that the state intended to use this video all along, not an intention that was completely formulated only after the wife testified. Absolutely. And that's the fork in the road, right? I think that is the fork in the road. I like the way you put that because, to my mind, clearly there's a discovery violation. I don't think there should be any question about that. The question is, what's the appropriate sanction for it? And if you say, well, we're going to affirm, then the message is do whatever you want. Take your chances that maybe the appellate court will say, oh, it wasn't prejudicial, or we don't know precisely what the defense would have been in this case. It's hard to demonstrate that. So you just go ahead and you do whatever, and we're back to the days of games. Isn't it pretty clear, though, that the case law indicates that exclusion is only appropriate in the most extreme circumstances when you're talking about a discovery violation? I don't think that that's the case because some of the case law that's cited in this first argument are situations where the appellate court says, you know, the state can profess as much as they want that they did not have that intention. But we find that they did, and we find that that interfered with the defendant's ability to prepare for the trial. And I'll double-check this again, Your Honor, but I don't think there is any substantial discussion of prejudice. I think the question is, what is the appropriate sanction once we find a discovery violation? Let me ask you this, then. Sure. You know, one of the myriad of sanctions the court can use, and I note this was a bench trial, this was not a jury trial, is to give you ample time to address the new evidence. Right. So even if everything you've said thus far were up to this point, why isn't that a sufficient sanction slash remedy to the defense? Typically that type of remedy comes about before the testimony is introduced. So one side or the other becomes aware that suddenly there is some new evidence they didn't know about earlier. They object to the trial court, and the trial court says, okay, wait a minute, before I allow that testimony to go forward, I'm going to give you exactly that opportunity. You can investigate, et cetera, et cetera. In this situation, it's too late. So more like it's too late disclosure, but before the defendant has put on his or her case. Right. And in this case, the bell has already been rung. The testimony has already been presented. What is the defense supposed to do at this point? Say, oh, Judge, gee, you know, if we had only known, we wouldn't have put Mrs. Lipsy on, or she wouldn't have testified to certain things that she did introduce. So will you please just ignore what you heard? I mean, that can't be done. But we lose sight of the fact, though, that the goal here is to seek the truth. And so what we're actually saying is, well, if she'd known about this, she wouldn't have testified as she did. So, okay, we're going to make it easy for her, then, to not testify as to what she said at the time was truthful. Well, I have two problems with that. Number one, criminal trials, in particular, are limited searches for the truth because we have things like the Fourth Amendment, which excludes truthful testimony under certain circumstances. We have other types of constitutional protections that take, that hem in our ability to get everything we might otherwise get if we didn't have those protections. So that's number one. And number two is, it's not just a question of whether Mrs. Lipsy was truthful or would have testified to exactly the information that she did. It's a question of what is the right of defense counsel to determine what he's going to put on. Well, the defense counsel doesn't have the right. It's the defendant who has the right, not the lawyer. The defendant only has the right to decide whether he himself will testify. It's the lawyer who prepares the strategy and says, here's what we're going to do. We're going to have her testify or not testify. So defense counsel in this case, standing in the shoes of the defendant as if he were the defendant, doesn't have that opportunity. That's my problem with your comment. So basically here, with respect to the defendant's purported ability to walk, as shown in the video, the only guy that's in the dock here is the defense attorney. I mean, the defendant knows he was at Wal-Mart, or someone was at Wal-Mart, whatever. His wife knows he was there. The defendant knows he was there. The only guy that's making up his trial strategy in the dark is defense counsel. That's right. So basically what you're arguing is defense attorneys everywhere have the right, I'll use your term, the right, to have all the cards on the table before he or she decides this will be the trial strategy for this state's case. Is that the bottom line? Yes. And to oversimplify it a little, for purposes of trial, the defense attorney is the defendant. He is the person who decides what the defense is doing. He's the guy going to jail, though. No, well, we can be happy about that. He's the person who decides how the case is going to proceed. And the Sixth Amendment entitles Mr. Lipsy to the protection of having counsel for his defense. What does that mean if defense counsel can be surprised at the trial? Well, are we saying then that the state has no right to anticipate what a defense might be, what evidence they might need, and they have to wait until the case starts to prepare any possible rebuttal testimony? And so they would be the ones surprised. If they waited until they heard that testimony to start, and just generally to prepare or get possible rebuttal testimony in order, they would be the ones surprised and left with one hand behind their back. The whole thing is strategy. The strategy has to be on both sides. And, again, the case law tells us that it's when the intent is formed to use it. And, again, that's why the cases, I believe, talk about appropriate sanctions and appropriate ways that a trial judge may level the playing field, may correct something that might have been an error and would allow the defense in this particular case time perhaps to get a medical expert to come in to testify more specifically about the aspect of the defense that really was key, which was his ability to function sexually or to come up with some other surrebuttal evidence and to allow surrebuttal to begin with. May I take issue with your premise? Because having tried many, many dozens of cases, I know that good trial lawyers try to anticipate what their opponent is going to do. Of course. Of course. And if they know what the other side is going to introduce, they're going to prepare ahead of time to try to respond to that in some way or to try to put on their evidence, if they go first, to blunt whatever it is might be their opposition. So to say that now the state or any party is not going to prepare adequately because of this kind of ruling I think is not realistic. Every good lawyer does that sort of thing. And that's what the state was doing. I think there was nothing wrong, in a sense, with trying to anticipate whatever rebuttal they might have to the defense medical evidence or the lay medical testimony. What was wrong was they didn't disclose it. All right. Anything further? He'll interrupt. Yeah. All right. You'll have time to rebuttal. Thank you. Ms. Burns? Good morning, Your Honors. Good morning. Please, the Court. Mary Beth Burns on behalf of the people. We come before you this morning to respectfully ask you to affirm this conviction. I think that there's a significant problem in analyzing, as defense counsel did, whether, in fact, the prosecution intended to use the tape. And the problem is, despite more than one request for, essentially, how what was termed a medical defense was going to be presented, in fact, despite having apparently hundreds of pages of documents, there was no discussion of a witness who would bring the stuff in, which meant that it was essentially inadmissible. There was no discussion even of the defendant's treating physician coming in. And so the people were left with no idea how with what were listed as, I think, their Category A witnesses, how what was their stated defense could possibly be presented. So, yes, they had the tape. I think it was about two months before trial. They didn't have any reason to know what would or would not be presented, so whether this tape would be admissible at all. You're telling me that the State had no idea that his defense was going to be physical incapability. Yes. The reason I say that is that... The experienced assistant had no clue that this is what his defense was going to be? They knew that what the defense had said was that there was going to be a defense raised regarding his physical problems, primarily the diagnosis in the mid-2000s of spina bifida and surgeries in, I think, 2006 and 2007. Nothing was disclosed as to how this medical evidence would be presented. Ultimately, it was presented through the defendant's wife. And basically, the way she presented it was not in the way that normally would be presented through either a treating physician explaining the defendant's specific issues or a medical expert who would explain the implications of spina bifida and would explain the implications of these two surgeries. Did the defendant list a doctor in his disclosure? He did. The doctor he listed was a psychologist who was going to talk about his mental state. I believe that that testimony was precluded. I believe there was a doctor at the University of Chicago who did do his surgery and there was documentation from the surgery and documentation, I think, from other medical things, I believe, stemming from the diagnosis in the mid-2000s of spina bifida, I believe. So he didn't list the surgeon? I believe he listed the surgeon. That's a possible witness. He was never listed as a possible witness. And again, even his normal treating physician was not listed as a possible witness. So to the extent that you may have had hundreds of pages of documents relating to his physical and mental state, none of those things could have had a foundation laid for them because there was no witness named who would be testifying. Again, what struck me was not even his treating physician. I could see where perhaps they didn't want to get experts on spina bifida or a surgeon from the University of Chicago, but I assume he has a treating physician who maintains his condition. Even that person was not listed to be called. So the people had no way of knowing exactly what was going to be presented. In their discovery disclosures, the defense said that they were relying both on his medical condition and on his presumption of innocence. And at the point of going to trial, there was still no disclosure about how his medical condition would have been supported by anything that would count as medical or scientific or treating or expert testimony. So therefore, to say that they knew they were going to use evidence that would have been irrelevant in the case in chief and could have only been relevant in rebuttal when they didn't know how this particular defense was going to be rationally presented is simply not supported by the record. And, yes, they talked to Mr. Weiss about it. Mr. Weiss is their boss. They sat down and said, here's this tape. And he said, hold off until they finish their case. They didn't finish the entire case. Why would you hold that off? Why would you not disclose that videotape? Because you don't know if it's going to be relevant or not. Wait, wait, wait, stop. You're telling me that the state only ever discloses relevant discovery, never discloses things that may or may not come in? I guess my understanding would be that you may disclose a whole lot of information. You're not going to disclose rebuttal unless you know you're going to use it. But the question is, what is this information discoverable? It has rebuttal, yes. Otherwise, it was irrelevant. It should never have come in. So if the defendant had rested, you would never have used the tape. If the defense had rested and not tied his physical limitations with his ability to commit the offenses, then, yes, it would not have been presented because it would not have been relevant to anything. It's only relevant when the defendant's wife ties his physical inability or his physical limitations with an inability to actually perform the predatory criminal sexual assaults. Well, there's no relevance to the fact that any person, including the defendant, walks normally, correct? Because that's what actually the video kind of shows is, hey, he's walking normally, so who cares? I mean, why would anyone care that he's walking normally until there's some evidence that says he has difficulty walking normally? Precisely. And, again, I certainly concede that the record shows that they had said this was going to be their defense, but where there was no way of knowing how it was going to be presented or in what fashion. Also, amid the hundreds of pages of discovery, there was, I believe, and this may have been from the back of the University of Chicago, I'm sorry, I can't remember, but I believe it's cited at C-147, which says that at that point he was still sexually functioning. And so, again, based on what was submitted to them before trial, they didn't have any reason to know, at least with any certainty, what was going to be alleged, what was going to be presented, and how that was going to shape up to a defense of physical impossibility. And there was a motion in limine that the State brought to try to flesh this out on June 5th, 2014. I believe there were three motions in limine filed. Two of them were directed at developing, you know, and, again, it's perhaps inartful to say developing what the defense was going to be. It was a matter of developing what was going to be presented, what witness was going to be presented in order to bring this information before the trier of fact. Right. And in that particular time, the defense really was focusing not on, quote, physical impossibility, but, quote, that the offenses could not have occurred, quote. I believe so. All right. And the court focused or interpreted that to mean, really, that there was going to be a focus on erectile dysfunction. I believe so. I believe also that despite precluding certain things the defense wanted to put in about the victim's character, there was still the belief that the defense would also be the child's credibility, not with the stuff that was precluded, but the child's credibility as to lateness of report, things like that. And so I think that going into this, the belief was that you were going to have a two-tier defense. It would be the defendant's medical condition, and it would be what they viewed as the child victim's lack of credibility, what the defense believed. And so until the defendant's wife had tied his physical limitations with the perceived inability to commit the offenses, it is at that point that the video became relevant, and it was at that point it was turned over. Even if one assumes that there was a discovery violation, which I think under 412 there is certainly not, but even if one assumes that there was, the trial court fashioned the appropriate remedy. There was going to be a break in the trial proceedings, not necessarily tied to this for other reasons, but in addition to the break, which would allow them to consider how to attack this information, the court also very specifically said, without being asked, that Mrs. Lipsey could well be presented in surrebuttal, and that did occur. So even if there had been a violation, which again we do not concede, there was an appropriate remedy formed for it. And again, this was a bench proceeding. Even trial court below stated, I believe more than once on the record, the presumption that the trial court only relied on reliable and proper evidence. But the horse is out of the barn by the time the trial court is only relying on properly admitted evidence. This isn't a question of whether it was properly admitted. This is a question of whether there was a discovery violation. And so the fact that this is a bench trial or a jury trial really doesn't impact that. That affects whether, if this court were determined that there was a violation, that determines whether there's a proper remedy. Again, 412 and case law interpreting it say that the prosecution does not have to turn anything over for rebuttal until it forms the intent to use it. The record shows that they had no reason to have the intent to use it based on what had been provided to them in discovery until the defendant's wife testified. Had she told, she was interviewed by the police. Yes, she was. Had she told the police during that interview basically the sum and substance of what she testified to? I believe with some variations, but. And I'm not talking about the physical capabilities of performing the act sexually as much as, you know, the walking and that kind of stuff. Had she talked about that with the police? You know what, I'm sorry. I don't remember as well what all was on her chain. I believe that, if I recall correctly, the bulk of it concerned her disbelief in the daughter's report to the school. I think that the other, my recollection is that that was the bulk of it, and that other aspects came later. I believe that it was consistent, but I truly do not recall as well about the tape of the duro testimony. Well, all I'm getting at is that if she had, in her tape-recorded statement with the police, if she had said, well, you know, he really has a hard time getting around, and he has a hard time walking, and he usually uses a cane, and so I don't think he could have performed these acts in those physical positions that the girl said and so forth. If she had said that in her tape-recorded statement, then the State would have been alerted to some degree that this is the testimony that is likely going to be coming. Certainly to some degree, yes. If Your Honors have no more questions, I respectfully ask this Court to affirm the convictions. I have one last question. Could we consider, sorry about that, but this is a bench trial, so could we consider what is on that tape as, in effect, her statements? I mean, I know it's not words, but actions can be considered a statement. I would have to say yes, because the trial court relied on her statements. Her statement, again, since it's before the record, right, it's before the trial court as a matter of record, then yes, I believe this Court could. What's in the videotape, we could consider her actions there as a statement? I believe so, again, because the trial court relied on it. Excuse me, I'm confused about the question and answer. Are we talking about the videotapes or her statement to the police? My understanding is that the statements to the police were videotaped. We're talking about two different statements. Oh, I'm sorry, I apologize. Can we consider what happened on the video? I'm sorry, you mean the Wal-Mart video? The Wal-Mart video. Oh, okay. Can we consider that as a statement? Is the actions of the wife or the defendant on that tape, is that a statement? No. The reason I would say no is that, to me, a statement means something that you are giving to a police officer or you're giving to an investigator or you're knowingly giving to someone. They were being taped in a situation where they did not know that they would be conveying information through their action. Okay, so you would say that if a defendant is surreptitiously taped and he doesn't know it, that that's not a statement then? Like an eavesdrop? Okay, an eavesdrop is different because – You said the threshold here was what they didn't know they would be making a statement and, therefore, it's not a statement. Is that your position? I think so. Okay. Yeah, I might be wrong on that, but that would be my son's, but at this moment. Fair enough. Okay. Thank you very much. No, thank you. Thank you. Good morning. Mr. Lecter? Let me try to answer some of the questions the court had both for me and for opposing counsel. What I want to bring you back to, if I can, is the fact that the state obviously has access to the testimony, the anticipated testimony of the complaining witness before the trial.  She's going to – Excuse me. How is that, counsel? Pardon? How do they know what she's going to say? Because they interview her and they prepare her for her testimony. I'm sorry. Who? Maybe I misheard you. The complaining witness. Oh, the complaining witness. Yes. I misheard now. Okay. Yes, I'm sorry. Thank you. I didn't make that clear. Okay. So they know what M.L. is going to say. They know she's going to say things like, my father has a separate bathroom because he has medical problems. My father has great difficulty walking around the house. He uses a cane a lot. He has difficulty going up and down the stairs and so forth. They know all these things. This is not a secret to them before the trial. And the defense – I'm looking at page 18 of my brief. The defense – How is this video then – how does the video hurt the defense then? If the victim says he has great difficulty doing this and she's the one who testified that he performed these acts in the manner in which he testified he did, how then is the video at all detrimental or even relevant as opposed to collateral to what the issues are given the testimony you just described? Because the wife gets on the stand and, again, says he has a great deal of difficulty. And all of a sudden, he's walking all through the – I don't know if you've seen the video at Walmart, but he's walking all through that store. I mean, an extensive, a lengthy – So everybody's lying? I mean, what – Many. What a shock. Isn't it possible, though, that I can walk normally but I can have a hard time kneeling? Or I can have a hard time squatting? Or I can have a hard time doing some other thing? I know that because I'm 61 years old and I – And I'm a little older than you, Your Honor, and I'm going to tell you under oath, you can see me walking in and out of this courtroom, but if I'm on my knees, it is unbelievably difficult with sciatica to stand up without assistance. So what's the relevance of it? But if I may, I hear you making a distinction between a defense of physical impossibility and a defense of impotence. So on page 18 of my brief, I'm quoting the defense discovery answer, telling the prosecution it's going to rely on the defense of, quote, physical impossibility of several of the alleged acts due to the defendant's physical infirmities. And then it goes on. It attaches medical records and it says, quote, including nerve impairment and loss of sensation which render the defendant impotent. The defense tells the state there are two aspects to this problem. He's physically unable to do things and he's impotent. So, again, none of this is a surprise to them. And when the state cross-examines Mrs. Lipsy, they also set the stage for this Walmart video because the prosecutor is asking her all these questions. He knows that that's what's going to happen here and he knows he's got in his pocket that video to contradict her. If she says, oh, yeah, he just can't do it. He just can't do it. So the idea that the state had, quote, no idea what the defense was going to be is a little short of ridiculous. And if I could address Justice Zinoff's comment, I think it was your comment, Your Honor, about certainty, whether the state knows with certainty what's going to happen, what's going to be presented in the defense case. I don't think that's the standard, Your Honor. The standard is not that they know with precision what the testimony is going to be. The standard is, do they know what the defense has said to them about the defense of the case? And clearly, the defense has told them Mr. Lipsy has medical problems, that he has impotency problems, that he has difficulty walking, et cetera, et cetera. You know, it's a lengthy disclosure. And I look back again at my brief here because I didn't recall one of the facts. When they disclose this defense, they attach medical records. And when the defense files one of its motions, when the state files one of its motions in limine, they allege the medical records provided by the defendant fail to contain enough information. We want more. There should be absolutely no question that this is out in the open. They know what's going to happen. And they're going to try to embarrass the defense by springing the sentence. Thank you very much, counsel. The Court will take the matter under advisement and render a decision in due course. We stand in brief recess until the next case.